**TROUSDALE**

v.

**TEXAS & N. O. R. CO.**

No. 12539.

Court of Civil Appeals of Texas.

San Antonio.

Nov. 18, 1953.

Rehearing Denied Feb. 10, 1954.

Stahl & Sohn, Robert B. O'Connor, San Antonio, for appellant.

Brewer, Matthews, Nowlin & Macfarlane, San Antonio, Baker, Botts, Andrews & Parish, Houston, for appellee.

POPE, Justice.

Appellant, the plaintiff below, appeals on the ground that the jury was guilty of misconduct. Appellant sued for damages arising out of personal injuries sustained in a railroad accident, and the jury found against him both on the negligence and unavoidable accident issues. The controlling point urged in this case is whether prejudicial misconduct resulted when two jurors allegedly stated during deliberations, that findings on the negligence and unavoidable accident issues were immaterial after the damage issue was answered, and as a consequence of which two other jurors changed their votes.

Appellee contends that no prejudicial misconduct occurred, but that in any event it would be immaterial, because appellee was entitled to an instructed verdict. The parties have at length detailed the pertinent evidence they adduced in support of their claim and defense. Fact issues were clearly raised, and no good purpose would be served by restating their extensive proofs. This case is controlled by the presence or absence of prejudicial misconduct.

The trial court made and filed findings of fact and conclusions of law. Those findings were prefaced by a "preliminary statement" which detailed the reasoning process of the trial judge in weighing and sifting the evidence. Appellant, in the trial court and here, objected seriously to the process which included consideration of the method of counsel's questioning, the trial court's disapproval of the use of a trained investigator, and the failure to prove all matters stated in affidavits attached to the motion for new trial. Appellant urges that these findings are untenably grounded and for that reason should not be considered.

Since the trial court found that misconduct existed with reference to the above stated misconduct, appellant is not harmed by the trial court's method in reaching that conclusion. As stated in Motley v. Mielsch, 145 Tex. 557, 200 S.W.2d 622, 623, and other opinions of the Supreme Court: "Whether misconduct of the jury occurred is a question of fact to be proven by the complaining party on the hearing of the motion for a new trial, but after the misconduct has been established, then it is a question of law for the trial court, and on appeal the reviewing court, as to whether injury probably resulted to the complaining party. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462." Hence, the collateral considerations by the trial court harmed appellant in no way, since they did not ob-

struct a finding of misconduct and the effect of misconduct is a law question which this Court must independently determine. White Cabs v. Moore, 146 Tex. 101, 203 S. W.2d 200.

The record manifests much work and a careful consideration by the trial court of the evidence developed at the misconduct hearing. However, the record is surfeited with inquiries into the jurors' thoughts, beliefs, motives, intentions, desires and wants. It is replete with jurors' self-appraisals and affirmations and denials of influence. The findings of the trial court, which relate to the law question of probable harm, are a mixture of overt acts, which we may properly consider, and of mental operations and states of mind of certain jurors, which we may not consider.

The court found that a single juror made the statement that the answers were immaterial after the damage issue was answered; that the vote of the jury stood ten to two in favor of the defendant on the negligence and unavoidable accident issues, with Jurors Page and Zamora holding out for the plaintiff; that while so divided, "the juror Gring expressed the opinion, *in accordance with his honest belief, that he did not think* that it would make any difference, that he did not *think* that the railroad would have to be found negligent for the plaintiff to be awarded the money." The court found that the statement was not discussed. After Gring, who was foreman, made the statement, the two hold-outs changed their votes. On contradictory evidence the court refused to find that a second juror, Crawford, made a similar statement. The court found further that Page and Zamora "both *believed* that the evidence did not show negligence, but both voted 'yes' on the first ballot merely because they thought that they could award damages in no other way, and that on the second ballot they both voted *in accordance with their true conviction.*" The court found also that Page "expressed his opinion to other members of the jury that negligence had not been shown by the evidence," but that Page, despite that admission, voted "Yes", "con-

*trary to his conviction* that negligence had not been proven * * * and that on the second ballot he voted *in accordance with that conviction.*" And as regards Zamora, the court found that he stated during deliberations, that he thought voting for negligence was the only way the plaintiff would be awarded some money. The court then found that Zamora was asked, during deliberations, if that was the only reason for so voting, and that Zamora, when so confronted, did not offer any argument or express any opinion in support of his vote. From this the court concluded that Zamora *"did not believe that the evidence showed negligence,"* notwithstanding his vote showing there was negligence.

The trial court determined that the misconduct did not result in probable injury, but reached this result through an endeavor to isolate the jurors' so-called honest and true convictions, both before and after the misconduct occurred. The court concluded that before the misconduct occurred Page's and Zamora's honest convictions were contrary to the way they were voting. After the misconduct, the court found that they voted honestly. The court's determination of the jurors' true convictions was grounded on (1) a statement that Page made during the jury deliberation, to the effect that the evidence did not support his vote, and (2) Zamora's silence, when confronted with the charge that the only reason for his voting "yes", was to give the plaintiff damages. Page's statement was not misconduct, and a serious question arises whether a court can pass judgment on attitudes and remarks that concern the thoughts of jurors about the issues. Jurors, while deliberating, may take tentative or contingent positions, assume hypotheses, make concessions for purpose of argument, think out loud, think illogically, and change from one position to another many times. Jurors, within their province, even have the right to be wrong. Our faith in the system rests upon our confidence that other jurors will make the better reason prevail. But to permit courts to hear testimony about a statement made during deliberations, not itself misconduct, but revealing the status

of thought or changing thought, and to use it as a predicate to show that a juror "ought" to have voted a certain way at a given point in the deliberations would be an intrusion into the affairs of jurors that has never been tolerated. The effect of such procedure is that a judge casts a vicarious vote for the juror at some point in the deliberations.

Zamora's statement that a finding of negligence was the only way plaintiff could recover, is regarded by the trial court finding as Zamora's only motive for holding out. In support of the view that such motive was the only reason rather than a reason, the court found that Zamora remained silent when confronted with such an accusation by another juror. A court is not a thirteenth supervisory juror who may compel one juror to answer another, or determine when a juror should speak or be silent at the risk of making an admission against interest. Akers v. Epperson, 141 Tex. 189, 171 S.W.2d 483, 156 A.L.R. 1028; Glazer v. Woodward, Tex.Civ.App., 127 S. W.2d 938. Jurors may talk themselves out of or listen themselves into mental attitudes. If courts may determine a juror's mental state by his failure to retort to reasons stated during deliberations, future cases will find courts and other jurors passing upon the mental operations of jurors singly or collectively. Even misconduct by Zamora does not excuse Gring's misconduct. If Juror Zamora was guilty of misconduct, which is not urged, the remedy is a new trial, but not misconduct of a different kind on the part of another juror. Gring's misconduct, in stating that certain issues were immaterial, is neither excused nor purged by proof that the misconduct converted another juror from an ill-founded position to a well-founded one.

Texas, after 1905, relaxed the common-law rule that prohibited all impeachment of a verdict, but, at the same time, drew the line with reference to inquisitions into jury deliberations at the point where the inquiry probes the juror's mind. The rule is settled that a juror's mental processes may not be probed. Akers v. Epperson, 141 Tex. 189, 171 S.W.2d 483, 156 A.L.R. 1028. The temptation to encroach upon and evaluate the thoughts of jurors has on certain occasions required a re-statement of the rule, and an overruling of precedents, even of the Commission of Appeals, that yielded to the allurement. Traders & General Insurance Co. v. Lincecum, 130 Tex. 220, 107 S.W.2d 585.

When the general rule is applied to specific inquiries, we find these results: A juror's disavowal of influence derived from misconduct is not a proper inquiry. Motley v. Mielsch, 145 Tex. 557, 200 S.W. 2d 622; Sproles Motor Freight Lines, Inc. v. Long, 140 Tex. 494, 168 S.W.2d 642; Traders & General Ins. Co. v. Lincecum, supra (expressly overruling decisions to the contrary); Republic Ins. Co. v. Hale, 128 Tex. 616, 99 S.W.2d 909; Sidran v. Western Textile Products Co., Tex.Civ. App., 258 S.W.2d 830, 832 (writ granted). A juror's admission that he was influenced is equally improper evidence, for the same reasons. Swaim v. Teasley, Tex.Civ.App., 249 S.W.2d 674; Phillips v. Texas & Pacific Ry. Co., Tex.Civ.App., 223 S.W.2d 258; Gulf, Colorado & Santa Fe Ry. Co. v. Waterhouse, Tex.Civ.App., 223 S.W.2d 654, 662; Lackey v. Moffett, Tex.Civ.App., 172 S.W.2d 715; Chandler v. Wiemers, Tex.Civ.App., 4 S.W.2d 569; contra, Perez v. Consolidated Underwriters, Tex.Civ. App., 206 S.W.2d 162; Hampton Co. v. Joyce, Tex.Civ.App., 80 S.W.2d 1066; Southern Traction Co. v. Wilson, Tex. Com.App., 254 S.W. 1104. A juror's self-serving statement that the case was tried according to the law and the evidence is not a subject of inquiry. Motley v. Mielsch, 145 Tex. 557, 200 S.W.2d 622. A juror may not be called to account for his logic or the absence of logic. Akers v. Epperson, 141 Tex. 189, 171 S.W.2d 483, 486, 156 A.L.R. 1028; Bradley v. Texas & P. Ry. Co., Tex.Com.App., 1 S.W.2d 861; Maddox v. Texas Indemnity Ins. Co., Tex. Civ.App., 224 S.W.2d 495, 499; Stockwell v. Snyder, Tex.Civ.App., 51 S.W.2d 812. A failure to understand the court's charge is not a subject of inquiry. Bradley v. T. & P. Ry., supra; Kindle v. Armstrong Pack-

ing Co., Tex.Civ.App., 103 S.W.2d 471. The honest purpose and motives of a juror neither excuse nor mitigate misconduct. Whelan v. Henderson, Tex.Civ.App., 137 S.W.2d 150, 152; Stehling v. Johnston, Tex.Civ.App., 32 S.W.2d 696.

These rules are epitomized in the Supreme Court's general statement that "It is never permissible to allow a juror to either preserve or destroy his verdict by testifying to the mental processes by which he reached the same." Sproles Motor Freight Lines, Inc. v. Long, 140 Tex. 494, 168 S.W. 2d 642, 644; Motley v. Mielsch, 145 Tex. 557, 200 S.W.2d 622; Republic Ins. Co. v. Hale, 128 Tex. 616, 99 S.W.2d 909.

■ Such matters should not be the subject of inquiry in misconduct hearings, and they should be disregarded for all purposes when included in the court's findings. On the other hand, misconduct hearings should inquire into those matters which have been treated as overt acts. All conversation may be an overt act, but it is not everything a juror says that may be inquired into. These have been treated as and are considered to be overt acts which may properly be inquired about:

The nature and subject matter of the misconduct statement itself: Triangle Cab Co. v. Taylor, 144 Tex. 568, 192 S.W.2d 143; Sproles Motor Freight Lines, Inc. v. Long, 140 Tex. 494, 168 S.W.2d 642;

Whether it was stated as fact or opinion: Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462; Heflin v. Ft. Worth & D. C. Ry. Co., Tex.Civ.App., 207 S.W.2d 114;

Whether the misconduct was casual or loomed large during the deliberations: Sproles Motor Freight Lines, Inc. v. Long, supra;

Who made the statement: Barrington v. Duncan, supra;

How many others repeated it: White Cabs v. Moore, 146 Tex. 101, 203 S.W. 2d 200; Heflin v. Ft. Worth & D. C. Ry. Co., supra;

How many times it was stated: Heflin v. Ft. Worth & D. C. Ry. Co., supra;

Who heard or probably heard it: Sproles Motor Freight Lines, Inc. v. Long, supra; Stehling v. Johnston, Tex.Civ.App., 32 S. W.2d 696;

Whether it was discussed: Ford v. Carpenter, 147 Tex. 447, 216 S.W.2d 558; Blaugrund v. Gish, 142 Tex. 379, 179 S.W. 2d 266; Akers v. Epperson, 141 Tex. 189, 171 S.W.2d 483, 156 A.L.R. 1028; Bradley v. Texas & P. Ry. Co., Tex.Com.App., 1 S.W.2d 861;

Whether the discussion was brief or extensive: White Cabs v. Moore, supra; Heflin v. Ft. Worth & D. C. Ry. Co., supra;

Whether the misconduct was rebuked: Barrington v. Duncan, supra; Stehling v. Johnston, supra;

And, if so, whether it was promptly rebuked: Sproles Motor Freight Lines, Inc. v. Long, supra; Ford v. Carpenter, supra;

Whether the misconduct thereafter recurred: Sproles Motor Freight Lines, Inc. v. Long, supra;

How long the jury had been in deliberation: Texas Milk Products Co. v. Birtcher, 138 Tex. 178, 157 S.W.2d 633;

Whether the misconduct occurred before or after the verdict was reached: Ford v. Carpenter, supra;

At what point in the deliberations the misconduct occurred: Ford v. Carpenter, supra;

Whether it occurred at a crucial point or issue: Blaugrund v. Gish, supra; Stehling v. Johnston, supra;

Whether there was an agreement (not necessarily unanimous) to commit misconduct: Ford v. Carpenter, supra; Prudential Fire Ins. Co. v. United Gas Corporation, 145 Tex. 257, 199 S.W.2d 767; Monkey Grip Rubber Co. v. Walton, 122 Tex. 185, 53 S.W.2d 770, 773;

Whether the issues were discussed or voted on singly and in order or by groups: Lyons v. Cope, Tex.Civ.App., 217 S.W.2d 116, 121; Heflin v. Ft. Worth & D. C. Ry. Co., supra;

The numerical standing of the jury before and after the misconduct: Blaugrund v. Gish, supra; Stehling v. Johnston, supra;

And the court may consider the whole case, including the voir dire, testimony, argument and charge: Rule 327, Texas Rules of Civil Procedure; Akers v. Epperson, supra; Barrington v. Duncan, supra; Heflin v. Ft. Worth & D. C. Ry. Co., supra.

After a detailed consideration of the authorities, we believe this summary states what is competent and what is incompetent evidence in misconduct hearings, and is the correct rule of practice.

■ The misconduct present in this case falls within that group wherein a juror stated that certain answers were immaterial. Such a statement invades the law province of the court and is a departure from the jury's jurisdiction over facts. Despite the oft-quoted general rules stated above, we find no harmony in the opinions discussing this category of cases; but find courts placing their decision sometimes on proper overt acts; at other times on the bases of thoughts, beliefs, self-appraisals and motives of jurors; and sometimes on both. Falling within this latter group are: Mullinex v. Texas & N. O. R. Co., Tex.Civ. App., 257 S.W.2d 457; P & M Sales Co. v. Kenmare Jewelry Mfg. Co., Tex.Civ.App., 235 S.W.2d 515; Pope v. Clary, Tex.Civ. App., 161 S.W.2d 828; Pryor v. New St. Anthony Hotel Co., Tex.Civ.App., 146 S. W.2d 428; Warnack v. Conner, Tex.Civ. App., 74 S.W.2d 719; Carson v. Texas Pipe Line Co., Tex.Civ.App., 59 S.W2d 328; Taylor v. Alexander, Tex.Civ.App., 34 S.W. 2d 903; Mann v. Cook, Tex.Civ.App., 11 S.W.2d 572.

Those cases, it is believed, do not state the present law in that they permitted a consideration of the jurors' mental operations. Traders & General Ins. Co. v. Lincecum, 130 Tex. 220, 107 S.W.2d 585, analyzed the confusion in the authorities and then expressly overruled those decisions which had tolerated considerations of mental operations. Cases in this category, which have strictly adhered to that rule, or which base their results on the overt acts present or contain only a trace of any consideration of mental operations, are: Ford v. Carpenter, 147 Tex. 447, 216 S.W.2d 558; City of Amarillo v. Huddleston, 137 Tex. 226, 152 S.W.2d 1088; Walker v. Quanah A. & P. Ry. Co., Tex.Com.App., 58 S.W.2d 4; Gulf, C. & S. F. Ry. Co. v. Harvey, Tex.Com.App., 276 S.W. 895; Sidran v. Western Textile Products Co., Tex. Civ.App., 258 S.W.2d 830 (writ granted); Munoz v. Bollack Stores, Tex.Civ.App., 238 S.W.2d 275; Biers v. Ft. Worth Lloyds, Tex.Civ.App., 219 S.W.2d 493, 496; Heflin v. Ft. Worth & D. C. Ry. Co., Tex.Civ. App., 207 S.W.2d 114; Dwyer v. Southern Pac. Co., Tex.Civ.App., 141 S.W.2d 961; Harkins v. Mosley, Tex.Civ.App., 134 S.W. 2d 706; Figula v. Ft. Worth & D. C. Ry. Co., Tex.Civ.App., 131 S.W.2d 998; Allcorn v. Ft. Worth & R. C. Ry. Co., Tex. Civ.App., 122 S.W.2d 341; Stehling v. Johnston, Tex.Civ.App., 32 S.W.2d 696; Chandler v. Wiemers, Tex.Civ.App., 4 S. W.2d 569; Moore v. Orgain, Tex.Civ.App., 291 S.W. 583.

■ When we eliminate from the proof and findings all except that which relates to overt acts, we find that one juror made a statement that answers to certain issues were immaterial. Though heard by others, it was not discussed. After the statement was made, two jurors changed their votes. Rule 327 permits a court to consider the whole case. When we consider the fact that the jurors heard not only that statement, but heard the proofs during trial, listened to the attorneys argue each side for four hours, urging, no doubt, that the issues should be answered a certain way, and also heard the charge of the court, that they "must consider each question distinctly, separately and independently, and from all the evidence bearing upon that issue, and just as if that were the only question submitted to you"; it does not appear that the jurors probably were controlled and influenced by the undiscussed improper statement rather than the record and proper deliberations. Ford v. Carpenter, supra; City of Amarillo v. Huddleston, supra; Munoz v. Bollack Stores, Tex.Civ.App., 238

S.W.2d 275; Chandler v. Wiemers, Tex. Civ.App., 4 S.W.2d 569; Moore v. Orgain, Tex.Civ.App., 291 S.W. 583. Sidran v. Western Textile Products Co., Tex.Civ. App., 258 S.W.2d 830 (writ granted), and like cases, are not contrary to this holding, since in such cases there was discussion of the misconduct statement or other facts which are not present in the instant case.

■ Appellant urges that other misconduct occurred, but the trial court found on contradictory evidence that it did not occur. This Court is bound by those findings. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462; Monkey Grip Rubber Co. v. Walton, 122 Tex. 185, 53 S.W.2d 770. Appellant's other points are overruled.

The judgment of the trial court is affirmed.

## On Motion for Rehearing

Appellant urges that our opinion understates the facts wherein it states that the misconduct statement was not discussed. Appellant has copied testimony from the 251 page record of the misconduct hearing, which is claimed to show discussion of the misconduct statement by eleven jurors. Appellant also calls our attention to the fact that he requested a finding about discussion, which the trial court refused to make on the grounds that its findings were already full and complete.

The court's findings include the following: "Yet plaintiff * * * attributes to Allerkamp the statement that Gring and Crawford, said, 'Well it doesn't make no difference how we vote, if we vote no, he will get the money anyhow,' and refers the Court to page 16 N. T. (Statement of Facts for motion for new trial) where it is found that the witness did so testify, but on the same page he also said that he didn't think that they (Crawford and Gring) said that. * * * Without pointing them out here, I find that these same characteristics apply to the testimony of other jurors offered as witnesses by plaintiff." There is a direct finding that Gring did make the misconduct

statement. There is another direct finding that Crawford did not make such a statement.

We construe the findings as stating that only certain named persons committed the acts of misconduct, and that the other jurors did not commit them. The court illustrated the reason for such findings by alluding to juror Allerkamp's testimony as above explained. To illustrate the trial court's point further, the juror Groce testified that the jury engaged in an extensive discussion. He said, "* * * this thing was all discussed around amongst all the jurors, they all had a say in it." But when the testimony is read in context it shows that the juror was speaking about the jury's consideration of the facts with reference to whether the defendant railroad had been negligent, rather than the misconduct statement.

■ Some of the testimony can not be explained in such a manner, however. The juror Gomez, for example, testified that the jury argued and discussed the misconduct matter for about thirty-five or forty-five minutes. On the other hand, other jurors stated it was mentioned only once or twice. Page and Zamora, the hold-out jurors, testified to extensive discussions with juror Crawford, and yet the trial court found as a positive fact that Crawford did not make the misconduct statement at all. Credibility is determined by the trial court. Price v. Biscoe, 141 Tex. 159, 170 S.W.2d 729, 731; Sproles Motor Freight Lines v. Judge, Tex.Civ.App., 123 S.W.2d 919, 927.

The misconduct in the case reduces itself to an issue of whether there was discussion, and if so whether it was much or little discussion—whether the misconduct was merely or seriously present. Some jurors stated that there was discussion, one said he heard nothing, others said they heard varying amounts of mention or discussion of the misconduct statement. The best guide we have with respect to the occurrence of misconduct is found in the trial court's findings. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462, 465; Monkey

Grip Rubber Co. v. Walton, 122 Tex. 185, 53 S.W.2d 770.

The statements involved in this case—that certain special issues are immaterial—have been treated by many decisions as misconduct in the nature of discussions of law contrary to the charge of the court. Actually, on close examination, however, such statements are hybrid in nature and difficult to classify. If regarded as discussions of the law, it is misconduct; but such statements also partake of the nature of speculations and illogical reasoning processes of the jury, which, because mental operations may not be probed, is not misconduct, at all. Maddox v. Texas Indemnity Ins. Co., Tex.Civ.App., 224 S.W.2d 495.

▇▇▇ We treat the statements as misconduct, but in doing so and in measuring the prejudice, we are concerned not with possibilities but with probabilities. To measure probabilities, a misconduct trial must be placed in its proper setting—as a fragment of a greater trial. See Texas Power & Light Co. v. Hering, 148 Tex. 350, 224 S.W.2d 191; Smallwood v. Edmiston, Tex.Civ.App., 246 S.W.2d 220, 223. We must bear in mind that this is not a case where new evidence was injected into the jury deliberations. In passing on the probabilities as regards the reason that the jurors voted as they did, we are charged with the duty of considering not only the proofs of overt acts, but also the whole record. Rule 327.

▇▇▇ The plaintiff read thirteen pages of pleading to the jury, eleven of which asserted fault and violations of duty by the defendant. Twelve particularized grounds of negligence were stated. The defendant denied fault in four pages. The plaintiff took the witness stand and remained there for almost three full days, relating the nature of the accident. Twenty-eight witnesses were called, mostly by the defendant, who testified on the various phases of fault or its absence, in a record developed during three weeks of trial, comprising more than 1000 pages. An additional 800 pages were used to record the medical testimony of twenty-one medical experts. To prove various phases of negligence, the rotten board, which plaintiff claimed broke causing him to fall, was introduced in evidence. Pictures of all the railroad cars involved and of the railroad yards, plats drawn to scale showing everything within and about the Southern Pacific yards, and profiles showing grades and elevations for the railroad tracks in question were introduced, bearing on the alleged fault of the defendant railroad. The court submitted twenty-nine issues, twenty-seven of which inquired about fault. The attorneys argued the case for a full day, and the jury deliberated eighteen hours. The jury, in each issue it answered, found against the plaintiff as to the defendant's fault.

With that perspective, we do not consider it reasonably probable that the jurors swept aside as immaterial and unimportant, all the three weeks of legal combat over the presence or absence of fault; that they counted as unnecessary and purposeless all the proofs of fault and nonfault; and that they considered the court's inquiry and counsel's urgings with reference to the fault issues as idle curiosity. To conclude that a few minutes of wandering by a jury, in pursuit of a lay opinion or speculation that fault is immaterial, has the effect of vitiating all the pleadings, proofs, arguments, charge and issues, in effect, assumes the existence of a nonoperative jury system.

The probabilities in this case are that the jury felt the force of the trial, that the plaintiff failed to prove his case and the defendant succeeded in proving its defense.

Appellant states that we should retax costs, which we shall sustain. Appellant appealed on the single point of jury misconduct, and for that reason omitted the testimony of twenty-one doctors from the statement of facts. Appellee demanded that this be included in the statement of facts. Since it was irrelevant to the appeal, $429.50 of the costs are taxed against the appellee, and the balance of the costs are taxed against appellant.

The motion for rehearing is overruled.